IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GE BUSINESS FINANCIAL SERVICES INC. | ) | |
| (f/k/a Merrill Lynch Business Financial Services | ) | |
| Inc.), a Delaware Corporation | ) | Civil Action No. 08 CV 2678 |
| | ) | |
| Plaintiff, | ) | Judge Guzman |
| | ) | Magistrate Judge Mason |
| v. | ) | |
| | ) | |
| JOHN F. ROYCE, a Nevada resident, and | ) | |
| ALEX J. UMANA, a Nevada resident, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT OF PARTIES' PLANNING MEETING

In accordance with this Court's Standing Order, Plaintiff GE Business Financial Services Inc. (f/k/a Merrill Lynch Business Financial Services Inc.) ("Plaintiff") submits this Report of Parties' Planning Meeting for the Court's consideration:

1.    **Nature of Claims**.  This is an action for breach of a personal guaranties of a commercial loan.  Both John F. Royce and Alex J. Umana (together, the "Defendants") were parties with the Plaintiff to the Limited Joinder executed as of September 20, 2005, by which the Defendants jointly and severally guaranteed the obligations and indebtedness owing to Plaintiff by MM Condominiums LLC, who is now a debtor-in-possession in a bankruptcy proceeding pending in the United States Bankruptcy Court for the District of Nevada.  The Defendants have waived service, and Mr. Royce's answer is due on August 4, 2008, and Mr. Umana's is due August 12, 2008.  The Defendants have indicated that unless the parties can resolve their issues amicably, they will contest the allegations raised in the complaint.  At this time, Mr. Royce has not retained a lawyer.  To the best of Plaintiff's knowledge, Mr. Umana has not retained a lawyer.

2.    **Conference.**  Pursuant to Federal Rule of Civil Procedure 26(f), Mr. Royce and counsel to the Plaintiff's had telephonic conference on July 2, 2008.  Counsel the Plaintiff attempted to contact Mr. Umana, but those calls have gone unreturned.  Additionally, in connection with the MM Condominiums LLC bankruptcy case, the parties entered into an agreement wherein, as set forth in paragraph 4 below, this action will be stayed pending attempts to resolve the disputes among them.  A copy of that agreement is attached as Exhibit A hereto.

3.    **Initial Disclosures and Other Discovery**.  The parties have agreed to postpone the exchange of initial disclosures and the all discovery while they engage in settlement discussions.

4.    **Settlement**.  The parties have engaged in settlement discussions since the complaint was filed.  The parties, together with MM Condominiums LLC (the primary obligor of the debt owed by the Defendants and as a debtor-in-possession ), have negotiated and structured a process whereby the Plaintiff can be paid the sums it is owed.  That process requires many steps and milestones that must be met over the next several months.  So long as that process continues successfully, the parties have agreed to stay this action.  If, however, any steps or milestones are not met, the Plaintiff will resume the prosecution of this matter and seek entry of an order setting a discovery and trial schedule.

Respectfully submitted,

**GE BUSINESS FINANCIAL SERVICES INC** (f/k/a
**MERRILL LYNCH BUSINESS FINANCIAL
SERVICES INC.)**


By: _____*/s/ Peter A. Siddiqui*_____
              One of its Attorneys

John P. Sieger (ARDC # 6240033)
Peter A. Siddiqui (ARDC# 6278445)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone:     (312) 902-5200
Fax:              (312) 902-1061
john.sieger@kattenlaw.com
peter.siddiqui@kattenlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Peter A. Siddiqui, certify that on July 3, 2008, I served the foregoing **Report of Parties'**

**Planning Meeting** by United States Mail, postage prepaid, on the following parties:

<table>
<tr><td>John F. Royce</td><td>Alex J. Umana</td></tr>
<tr><td>5405 Mountain Meadows Lane</td><td>4980 Turning Leaf Way</td></tr>
<tr><td>Reno, Nevada 89511</td><td>Reno, Nevada 89509</td></tr>
</table>

_____ */s/ Peter A. Siddiqui* ___

**Entered on Docket**
**June 27, 2008**

_____
**Hon. Gregg W. Zive**
**United States Bankruptcy Judge**

STEPHEN R. HARRIS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
**Nevada Bar No. 001463**
417 West Plumb Lane
Reno, Nevada  89509
Telephone:  (775) 786-7600
Facsimile:  (775) 786-7764

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * *

IN RE:

MM CONDOMINIUMS, LLC
a Nevada limited liability company,

Debtor.

_____/

BK-08-50557
(Chapter 11)

**INTERIM ORDER AUTHORIZING
DEBTOR-IN-POSSESSION TO USE CASH
COLLATERAL AND PROVIDE
ADEQUATE PROTECTION**

Hrg. DATE:  June 26, 2008
and TIME:  2:00 P.M.
Est. Time:  10 MIN
Set By:  Judge Zive - per OST

Based on the MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 (c)(2) ("Motion"), filed on June 10, 2008, by MM Condominiums, LLC, a Nevada limited liability company, Debtor and Debtor-In-Possession hearin ("Debtor"), by and through its attorney of record, STEPHEN R. HARRIS, ESQ., of BELDING, HARRIS & PETRONI, LTD., with the hearing on the Motion set on Court ordered shortened time for June 26, 2008, at 2:00 P.M.; with STEPHEN R. HARRIS, ESQ., appearing on

1

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

behalf of the Debtor and the Debtor's representative JOHN ROYCE, also present; and JENNIFER SMITH, ESQ. of LIONEL, SAWYER & COLLINS, appearing on behalf of Secured Creditor GE Business Financial Services (f/k/a) Merrill Lynch Business Financial Services ("GE"); and WILLIAM COSSITT, ESQ. appearing on behalf of the U.S. Trustee's Office; and the Court noting the Objection pleading filed by GE to the relief requested by the Debtor and the U.S. Trustee's Office raising its verbal objection to the proposed cash collateral use stipulation; and the Court considering the duly executed (but not filed and entered) ORDER AUTHORIZING DEBTOR-IN- POSSESSION TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION; and the Court noting the parties' acceptance of the ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION; and good cause appearing,

**IT IS HEREBY ORDERED** that the ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION, attached hereto is **Exhibit "A"** and incorporated by that reference, is granted by the Court on an interim basis, with a final hearing to be conducted on July 8, 2008, at 2:30 P.M., assuming the Debtor mails notice of the final hearing, along with the proposed **Exhibit "A"** included therein, to all creditors and parties in interest requesting notice; and further, any cash collateral monies used by the Debtor prior to the final hearing shall entitle GE to the protections set forth in 11 U.S.C. §363 (m), as well as other protections as detailed in the parties' ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION;

**IT IS FURTHER ORDERED** that any opposition(s) to the requested final order entry shall be filed and served no later than 12:00 P.M., on July 7, 2008.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

2

1

2 RESPECTFULLY SUBMITTED BY:          APPROVED AND ACCEPTED

3 STEPHEN R. HARRIS, ESQ.             LIONEL, SAWYER & COLLINS
  BELDING, HARRIS & PETRONI, LTD.     50 W. Liberty St., #1100
4 417 W. Plumb Lane                   Reno, NV 89501
  Reno, NV 89509

5

6                                     6-27-08

7 _____         _____
  STEPHEN R. HARRIS, ESQ.             JENNIFER A. SMITH, ESQ.
8 Attorney for Debtor                 Attorney for GE Business
                                      Financial Services
9

10 APPROVED AS TO FORM

11

12

13

14 _____
   WILLIAM COSSITT, ESQ.
15 U.S. TRUSTEE'S OFFICE

16

17

18
                            ###
19

20

21

22

23

24

25

26

27

28
                             3

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1

2  RESPECTFULLY SUBMITTED BY:        APPROVED AND ACCEPTED

3  STEPHEN R. HARRIS, ESQ.           LIONEL, SAWYER & COLLINS
   BELDING, HARRIS & PETRONI, LTD.   50 W. Liberty St., #1100
4  417 W. Plumb Lane                 Reno, NV 89501
   Reno, NV 89509
5

6                                    6-27-08

7
   STEPHEN R. HARRIS, ESQ.           JENNIFER A. SMITH, ESQ.    6/27/08
8  Attorney for Debtor               Attorney for GE Business
                                     Financial Services
9

10
   APPROVED AS TO FORM
11

12

13

14
   WILLIAM COSSITT, ESQ.
15 U.S. TRUSTEE'S OFFICE

16

17

18                                   ###

19

20

21

22

23

24

25

26

27

28                                   3

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1

2    RESPECTFULLY SUBMITTED BY:                    APPROVED AND ACCEPTED

3    STEPHEN R. HARRIS, ESQ.                        LIONEL, SAWYER & COLLINS
     BELDING, HARRIS & PETRONI, LTD.               50 W. Liberty St., #1100
4    417 W. Plumb Lane                              Reno, NV 89501
     Reno, NV 89509
5                                         6-27-08

6

7    _____              _____
     STEPHEN R. HARRIS, ESQ.                        JENNIFER A. SMITH, ESQ.
8    Attorney for Debtor                            Attorney for GE Business
                                                    Financial Services
9

10   ⟨APPROVED⟩ AS TO FORM

11

12

13

14   _____
     WILLIAM COSSITT, ESQ.
15   U.S. TRUSTEE'S OFFICE

16

17

18                                         ###

19

20

21

22

23

24

25

26

27

28                                         3

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

# EXHIBIT "A"

1

2

3

4

5

6

7   Jennifer A. Smith
    jsmith@lionelsawyer.com
8   Nevada Bar No. 610
    LIONEL SAWYER & COLLINS
9   1100 Bank of America Plaza
    50 West Liberty Street
10  Reno, Nevada 89501
    (775) 788-8624 (Telephone)
11  (775) 788-8682 (Fax)

12  John P. Sieger
    john.sieger@kattenlaw.com
13  Mark D. Conzelmann
    mark.conzelmann@kattenlaw.com
14  Andrew L. Wool
    andrew.wool@kattenlaw.com
15  KATTEN MUCHIN ROSENMAN LLP
    525 West Monroe Street
16  Chicago, IL  60661-3693
    Telephone:  (312) 902-5200
17  Facsimile:  (312) 577-8681

18  Attorneys for Creditor GE Business Financial Services, Inc.
    (f/k/a Merrill Lynch Business Financial Services, Inc.)

19

20              UNITED STATES BANKRUPTCY COURT

21                   DISTRICT OF NEVADA

22  In re:                              Case No. 08-50557-GWZ

23  MM CONDOMINIUMS, LLC,               Chapter 11

24              Debtor.                 **ORDER AUTHORIZING
                                        DEBTOR-IN-POSSESSION TO USE
25                                      CASH COLLATERAL AND PROVIDE
                                        ADEQUATE PROTECTION**

26                                      Hearing Date: June 26, 2006
                                        Hearing Time:  2:00 p.m.
27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 WEST LIBERTY ST.
RENO,
NEVADA 89501
(775) 788-8666

This matter coming to be heard upon the motion ("Motion") of MM Condominiums, LLC, the debtor and debtor-in-possession ("Debtor" or "Borrower"), for entry of an order ("Order"), pursuant to sections 361 and 363 of title 11 of the United States Code ("Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), authorizing the Debtor to (a) use cash collateral which secures obligations owing to GE Business Financial Services Inc. f/k/a Merrill Lynch Business Financial Services Inc. ("Lender"), subject to the terms and conditions set forth herein, and (b) provide adequate protection to Lender as set forth herein; and upon the proceedings held before the Court; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:**

A.    On April 9, 2008 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

B.    The Debtor is a single asset real estate debtor as defined in section 101(51B) of the Bankruptcy Code, and is operating its business and managing its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Pursuant to that certain Loan Agreement dated September 23, 2005 between Debtor and Lender (as amended, "Loan Agreement"), that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 23, 2005 (as amended, "Mortgage") and certain other documents, promissory notes, instruments and agreements executed by the Debtor (collectively, with the Loan Agreement and the Mortgage, "Loan Documents"), Lender has made loans and other financial accommodations to the Debtor to, among other things, fund the Debtor's operations and construction ("Loan").

E.    All obligations and liabilities of the Debtor to Lender, whether under the Loan Documents or otherwise, are secured by a valid, perfected, first priority lien upon and security interest in and to all of the Debtor's assets, including real and personal property (all of the

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 WEST LIBERTY ST.
RENO,
NEVADA 89501
(775) 788-8666

1    foregoing as more fully described in the Mortgage, and all proceeds thereof, shall be referred to

2    collectively as, "Collateral" and such liens thereon, "Pre-Petition Liens").

3         F.    All cash of the Debtor wherever located as of the Petition Date represents either

4    proceeds of the Loan from Lender to the Debtor or proceeds of the Collateral. Lender has a

5    valid, perfected, first priority lien upon and security interest in and to all of the cash of the

6    Debtor, except to the extent $250,000 (or such amount as is subsequently approved by the Court

7    and consented to by Lender, not to exceed an additional $250,000) is loaned to the Debtor by

8    Charles Royce or a related person or entity other than Lender and is Court approved (and which

9    excepted funds shall at all times be segregated from Lender's cash collateral), and these funds,

10   along with the proceeds of the Collateral, constitute "cash collateral" within the meaning of

11   section 363(a) of the Bankruptcy Code.

12        G.    As of the Petition Date, the Debtor was indebted to Lender by reason of the Loan

13   and under the Loan Documents in the approximate amount of $3,887,347.84 (together with post-

14   petition interest, fees and other accruing charges both hereunder and under the Loan Documents,

15   the "Indebtedness"), the prepetition portion which is evidenced by the Proof of Claim filed by

16   Lender on or about April 24, 2008 (the "Lender Claim"). The Indebtedness constitutes a legal,

17   valid and binding obligation of the Debtor, enforceable in accordance with its terms, no offsets,

18   defenses, or counterclaims to the Indebtedness exist, and no portion of the Indebtedness is

19   subject to avoidance or subordination. Accordingly, the filing of an objection to (or any other

20   form of contestation of) the validity, enforceability, extent, priority and/or amount of the

21   Indebtedness – other than an objection to the reasonableness of the Lender's post-petition legal

22   fees pursuant to 11 U.S.C. § 506(b) – shall constitute a Termination Event (as defined below).

23        H.    By execution of this Order, John F. Royce, Charles Royce and Alex J. Umana

24   ("Guarantors") acknowledge, agree and confirm that the execution and entry of this Order shall

25   not and does not in any way modify, reduce, revise, lessen or decrease their respective

26   obligations as guarantors and/or indemnitors under the Loan as set forth in that certain

27   Performance and Completion Guaranty, dated as of September 23, 2005, as to all three (3)

28   Guarantors, or the Limited Joinder attached to and made a part of the Loan Agreement, dated

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

3

September 23, 2005, as to Guarantors, John F. Royce and Alex J. Umana only. Each Guarantor: (i) reaffirms, ratifies, and confirms that his obligations as guarantor and/or indemnitor under the Loan as provided for in one or more of the aforementioned guaranty agreements remains in full force and effect notwithstanding, among other things, any financial accommodations extended by Lender to the Debtor pursuant to the terms of this Order or otherwise; (ii) denies and waives the existence of any defenses or right of setoff which may otherwise be available to him relating to such guaranty agreements; and (iii) waives and releases any and all of his claims and causes of action which may exist against Lender. The Limited Payment Guaranty, dated September 23, 2005, executed by Charles M. Royce, has been previously returned to the Debtor as satisfied and is no longer in force.

I.    An immediate and critical need exists for the Debtor to be permitted access to funds in order to prevent a disorderly termination or disruption of the business and to permit the Debtor to attempt to achieve a reorganization.

J.    Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is required to provide adequate protection to Lender in respect of the Debtor's use of the Cash Collateral (as hereinafter defined).

K.    The Debtor has requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). Notice of the hearing on the Motion was proper and sufficient under Bankruptcy Rule 4001 and no other notice need be given.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    <u>Use of Cash Collateral</u>. Upon entry of this order, Alex J. Umana hereby accepts, and shall be deemed to have accepted, service of Lender's lawsuit against, among others, Mr. Umana, with respect to their respective guaranty obligations arising under the guaranty agreements referred to hereinabove. For so long as (i) the Debtor is in compliance with the terms of this Order and any other orders of the Court entered in connection with the use of Cash Collateral and (ii) no Termination Event (as defined herein) shall have occurred, Lender consents to the Debtor's use of the Cash Collateral, provided that such use strictly complies with the limitations set forth herein, including the Budget attached hereto as <u>Exhibit A</u>. Notwithstanding

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

4

anything to the contrary herein, the Debtor shall not make any Cash Collateral expenditures unless such Cash Collateral expenditures are encompassed and expressly included in the Budget, subject to an allowable variance of 5% for any line item expenditure made by the Debtor; and *provided, further,* that none of the Cash Collateral shall be used to pay any legal fees and/or expenses incurred by the Debtor.

    2.   <u>Certain Reporting Requirements</u>.  The Debtor shall observe and comply with the following covenants and conditions to the use of Cash Collateral.

        a.   From and after the date hereof, monthly by the 3rd business day at the beginning of each month, the Debtor shall provide Lender and counsel for Lender the following information for the preceding month:  (i) a report of all cash receipts by the Debtor (showing the date, amount, source and purpose of each); (ii) a list of all payments made by the Debtor (showing the date, amount, payee and purpose of each); (iii) copies of all invoices issued by the Debtor; (iv) copies of all sales contracts entered into by the Debtor; (vi) a statement disclosing all disbursements made form the funds to be borrowed from Charles Royce or any related person or entity, and the unspent balance of such funds; and (vi) such other reports as Lender may reasonably request from time to time, including, without limitation, detailed monthly statements from the property manager, Gaston & Wilkerson.

        b.   The Debtor shall certify to Lender each of the following:  (i) the Debtor spent Cash Collateral in accordance with the Budget;. and (ii) updated monthly actual performance compared to the Budget, submitted on the 3rd business day at the beginning of each month for the immediately preceding month.

    3.   <u>Ratification of Loan Documents</u>.  The Loan Documents are ratified and affirmed, and the Debtor shall perform all of its obligations thereunder, unless modified by the terms of this Order.  The Debtor hereby agrees, and the Court orders, the following modifications to the Loan Documents:

        a.   <u>Minimum Release Price</u>.  Schedule II (Minimum Release Price) to the Loan Agreement is hereby deleted, and replaced with Schedule II (Minimum Release Price)

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

5

attached to this Order as Exhibit B, which minimum release price shall be $125,000.00 per unit, either by sale or equity contribution.

   b.   Exit Fee.   Section 2.7 of the Loan Agreement is hereby deleted in its entirety and the following inserted in lieu thereof:

> "2.7   Exit Fee.   Upon the repayment of the Loan (whether on the Maturity Date or on any other date) or upon the acceleration of the Loan by Lender as provided herein, Borrower will pay to Lender an exit financing fee equal to the sum of Five Hundred Sixty Thousand and No/100ths Dollars ($560,000); provided, however, that if the outstanding principal balance of the Loan is less than $1,750,000 on or before December 31, 2008, then such Exit Fee shall be reduced to Four Hundred Sixty Thousand and No/100ths Dollars ($460,000)."

   c.   Loan Modification Fee.   In consideration of the extension of the Maturity Date and the other modifications to the Loan Agreement set forth herein, Debtor shall pay to Lender a loan modification fee in the amount equal to one-half of one percent (.5%) of the principal balance of the Loan as of the Petition Date ($3,499,733.19). Such fee shall be deemed to be earned upon the entry of this Order and shall be payable immediately upon entry of this Order.

   d.   Interest.   The first sentence of Section 2.5 of the Loan Agreement is hereby deleted in its entirety and the following inserted in lieu thereof (with the remaining other terms and conditions of Section 2.5 of the Loan Agreement left unmodified and in place):

> "Section 2.5.   Interest.   Provided that no Event of Default exists, the principal amount of the Loan outstanding from time to time shall bear interest until paid at a rate equal to a floating rate per annum equal to the sum of four and one-half of one percent (4.50%) plus the Base Rate (the aggregate rate referred to as the "Interest Rate"), but in no event shall the Interest Rate be less than eight and thirty-three hundredths percent (8.33%)."

   e.   Application of Net Sale Proceeds.   Section 2.9(a)(i) of the Loan Agreement is hereby deleted in its entirety and the following inserted in lieu thereof:

> "(i)   Application of Net Sale Proceeds.   All payments to Lender in accordance with this Section 2.9 shall be applied first, to the payment of all fees, costs and expenses of Borrower under the Loan Documents, second, to the payment of interest on the Loan; third, to the outstanding principal balance of the Loan, and fourth, to the payment of the Exit Fee.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

6

4. <u>Remittance of Cash Collateral</u>. From and after the date of entry of this Order until the indefeasible payment in full in cash of the Indebtedness, the Debtor shall deposit on a daily basis, all cash, cash equivalents and Cash Collateral arising from or constituting proceeds of the Collateral in its possession or control arising from or constituting proceeds of loans from Lender to the Debtor ("Cash Collateral") in one or more debtor-in-possession accounts which shall at all times be maintained with Gaston & Wilkerson. All monies collected by the Debtor shall be held in trust for the benefit of Lender, subject to the terms hereof; excluding, however, the insider-loaned funds contemplated in paragraph F, *supra*. Further, to consummate the completion of the Lender's Collateral, the Debtor shall borrow funds secured by a junior lien on the Collateral, which loan proceeds shall be escrowed with a builder's control account in an amount equal to $170,000.00.

5. <u>Receipt of Payments and Proceeds</u>. Any and all payments remitted to Lender pursuant to the Budget or otherwise, shall be deemed received by Lender free and clear of any interest, claim, charge, assessment, or other liability, all of which are hereby waived by the Debtor. Any and all amounts paid to Lender shall be applied to the Indebtedness in the manner set forth in the Loan Documents; *provided*, *however*, any and all Net Sales Proceeds shall be used to pay down, first, accrued, unpaid reasonable enforcement costs, second, to the payment of past due accrued interest on the Loans, and third, to the remaining principal balance of the Loan.

6. <u>Adequate Protection Payments</u>. As adequate protection for, and to secure the payment of, an amount equal to the aggregate diminution in the value of the Collateral (including Cash Collateral) subsequent to the Petition Date, and as security for and an inducement to Lender to permit the Debtor's use of the Collateral, the Lender Claim is hereby deemed allowed and fully-secured, and the Debtor agrees and is ordered to: (a) make monthly interest-only payments (commencing August 1, 2008, and the first day of each month thereafter) on the Loans pursuant to and in accordance with the Loan Documents, (b) immediately upon Court entry of this Order, pay $64,571.62 in reasonable unpaid legal fees accrued through June 12, 2008, in connection with Lender's enforcement of the Loan Documents. From future sale or refinance closings for individual condominium units, there shall be paid all accrued, unpaid post-petition non-default

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

7

1  interest on the Loan as calculated in subparagraph 3(d) herein.   So long as no Termination Event

2  exists, Lender suspends its right to charge and collect post-petition default interest.

3         7.   Adequate Protection Liens.  As further adequate protection for, and to secure the

4  payment of, an amount equal to the aggregate diminution in the value of the Collateral (including

5  Cash Collateral), and as security for and an inducement to Lender to permit the Debtor's use of

6  the Collateral, (x) the Debtor hereby grants, assigns and pledges to Lender post-petition security

7  interests and liens ("Adequate Protection Liens") of the same extent and priority as Lender's pre-

8  petition security interests in the Collateral (which interests and liens are deemed valid and

9  perfected pursuant to paragraph 6 hereof) in and to all of the Debtor's currently owned and after-

10  acquired real and personal property, which specifically includes, without any limitations, any and

11  all avoidance actions under chapter 5 of the Bankruptcy Code and the proceeds thereof and (y)

12  this Court grants Lender a super-priority allowed administrative expense claim pursuant to

13  section 503(b)(1) and 507(b) of the Bankruptcy Code ("Administrative Claim").

14         8.   Priority of Administrative Claim.   The Adequate Protection Liens and

15  Administrative Claim shall be senior to, have priority over, all other costs, priority or super-

16  priority claims and administrative expenses of the kind specified in sections 105, 326, 328, 330,

17  331, 503(b), 506(c), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code.  No priority claims

18  are or will be prior to or on a parity with the Administrative Claim.

19         9.   Restrictions on Use of Proceeds.  From and after the date hereof, the proceeds of

20  the Collateral and Cash Collateral, except any amounts loaned to the Debtor by Charles Royce,

21  shall only be used to pay items which are then due, expressly permitted under the Budget or this

22  Order, and in such amounts as identified in the Budget or this Order.

23         a.   Net Sales Proceeds.  Upon the Debtor's or its agents receipt of any Net

24  Sale Proceeds (as defined in the Loan Documents), all such Net Sale Proceeds shall be deemed

25  to be held in trust for the exclusive benefit of Lender and any and all such sums shall forthwith

26  be remitted to Lender for application to the Indebtedness in accordance with the provisions of

27  this Order.

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

8

1         b.   <u>No Transfers or Payments to Guarantors</u>.   Unless and until the

2 Indebtedness is indefeasibly paid in full and the Loan is terminated, the Debtor is strictly

3 prohibited from making, and the Guarantors (including, but not limited to, members of the

4 immediate or extended family of the Guarantors as well as any entity in which one or more

5 Guarantors or any member of one or more of their immediate or extended families holds an

6 interest of any kind) are prohibited from receiving, any transfers of property of the Debtor's

7 estate, including but not limited to any remuneration, payments of salary or other transfers of any

8 other kind, to or for the benefit of one or more Guarantor; *provided, however*, in the absence of a

9 Termination Event, Guarantors may accrue any salary due from the Debtor, provided, that such

10 salaries can be paid solely from the segregated insider-loan funds contemplated in paragraph F,

11 *supra*; and *provided, further*, that the Debtor may, subject to Lender's prior written approval

12 only after review of any and all contract and/or other business terms contemplated by the parties,

13 employ and make payments to Mountain Maintenance and/or Spectra Funding pursuant to and in

14 accordance with any supplement to the Budget expressly approved in writing by Lender to

15 account for such Lender-approved expenses.

16         c.   <u>No Surcharge; No Collateral Enhancement</u>.   No costs or expenses of

17 administration which have or may be incurred in the Debtor's case at any time shall be charged

18 against Lender, its claims or the Collateral, pursuant to section 506(c) of the Bankruptcy Code,

19 without the prior written consent of Lender, and no such consent shall be implied from any other

20 action, inaction, or acquiescence by Lender. Neither the surcharge provisions of section 506(c)

21 of the Bankruptcy Code nor the enhancement of collateral provisions of section 552 of the

22 Bankruptcy Code shall be imposed upon Lender or any of the Collateral, the Cash Collateral, or

23 proceeds thereof.

24     10.   <u>The Automatic Stay</u>. The automatic stay shall be, and hereby is, modified to the

25 extent necessary to permit Lender to retrieve, collect, and apply payments and proceeds in

26 respect of the Collateral, including all adequate protection payments made pursuant to this Order.

27     11.   <u>Termination Event</u>. As used herein, "Termination Event" shall mean the

28 occurrence of any of the following: (a) March 31, 2009; (b) the conversion of the Chapter 11

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

9

1  Case to a case administered under chapter 7; (c) the dismissal of the Debtor's bankruptcy case;

2  (d) the appointment of a trustee or an examiner in the Debtor's bankruptcy case; (e) the reversal,

3  revocation, modification, amendment, stay or rescission of this Order; (f) the Debtor's failure to

4  comply with, or its default under any term or condition of, this Order or any amendment or

5  modification thereof; (g) the Debtor's aggregate Net Sales Proceeds for the time period

6  commencing on the Petition Date through and including December 31, 2008 are not at least

7  $1,750,000.00; (h) the entry of an order pursuant to section 363 of the Bankruptcy Code

8  approving the sale of substantially all of the Debtor's assets; (i) the effective date of any plan of

9  reorganization or liquidation, if confirmed; (i) entry of any order pursuant to section 364 of the

10 Bankruptcy Code authorizing the Debtor to obtain post petition credit, except for such

11 subordinated post-petition credit provided by Charles Royce or a related entity and approved by

12 the Court and consented to by Lender; (j) the automatic stay is lifted as to any party in order to

13 permit foreclosure on any of the Collateral; and (k) any attempt by the Debtor to obtain, or if any

14 other party in interest attempts to obtain, an order of this Court or other order or judgment, and

15 the effect of such order or judgment is to, invalidate, reduce or otherwise impair Lender's claims

16 and liens, or to subject any of the Collateral to any surcharge pursuant to section 506(c) of the

17 Bankruptcy Code.

18     12.    Rights Upon a Termination Event.  Upon the occurrence of a Termination Event,

19 the Debtor irrevocably consents and agrees: (A) to immediately cease all use of Cash Collateral;

20 (B) immediately freeze any and all DIP Accounts containing Cash Collateral; and (C) upon

21 Lender's filing with the Court in the Chapter 11 Case of an affidavit disclosing the occurrence of

22 a Termination Event, to the immediate entry of a final, non-appealable consent order (i)

23 authorizing immediate automatic stay relief in favor of Lender with respect to all of its

24 Collateral, (ii) dismissing the Chapter 11 Case, and (iii) barring the Debtor from refiling an

25 insolvency proceeding, including, without limitations, a bankruptcy case under any chapter of

26 the Bankruptcy Code, for a period of not less than six months.  Notwithstanding anything to the

27 contrary herein, all of the rights, remedies, benefits and protections provided to Lender under this

28 Order shall survive the occurrence of a Termination Event, although Lender agrees to authorize,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

10

1    up to any trustee's foreclosure sale, any sale at or above the release price per unit (either by sale
2    or equity contribution) specified in subparagraph 3(b) herein.  Upon such an occurrence, the
3    Indebtedness shall be immediately due and payable and Lender shall have all other rights and
4    remedies provided herein and in the Loan Documents.  In no event shall Lender be subject to the
5    equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the
6    Collateral or otherwise.

7        13.    <u>Limitations on Use of Cash Collateral</u>.  No proceeds of the Collateral, or the Cash
8    Collateral, except as noted herein, shall be used for the purpose of:  (a) objecting to or contesting
9    in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or
10   enforceability of the Indebtedness or any liens or security interests with respect thereto, or any
11   other rights or interests of Lender, or in asserting any claims or causes of action against any of
12   them; (b) selling any of the Collateral (without the prior written consent of Lender); (c) incurring
13   any new indebtedness; or (d) modifying the rights of Lender under the Loan Documents.

14       14.    <u>Execution of Documents</u>.  The Debtor shall execute and deliver to Lender all
15   documents as Lender may reasonably request to evidence, confirm, validate or perfect the liens
16   granted pursuant hereto.  All liens granted herein shall, pursuant to this Order be, and they
17   hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect
18   such perfection.

19       15.    <u>Access to Debtor</u>.  The Debtor shall permit Lender, its agents and designees (i) to
20   have reasonable access to its premises and records during normal business hours and shall
21   cooperate, consult with, and provide to such persons al such non-privileged information as they
22   may reasonably request and (ii) to observe the Debtor's conduct and compliance with this Order
23   and the Loan Documents.

24       16.    <u>Acknowledgment of Indebtedness, Liens, et al</u>.  The Debtor hereby acknowledges
25   and agrees that:  (a) the repayment of any Indebtedness shall be deemed final and indefeasible,
26   not subject to subordination and otherwise unavoidable; (b) the Indebtedness is an allowed claim,
27   not subject to subordination and otherwise unavoidable, for all purposes in this Chapter 11 Case
28   and any subsequent chapter 7 case; (c) Lender's Pre-Petition Liens on the Collateral are legal,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

11

valid, binding, perfected and not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable; and (d) Lender, the Indebtedness, the Loan Documents and Lender's Pre-Petition Liens on the Collateral are not subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtor's estate, including without limitation any successor thereto.  The terms and conditions of this Order are reasonable and appropriate, are in the best interests of the Debtor and its estate, and are consistent with and satisfy the requirements and provisions of sections 363(e), 363(c)(2) and 361 of the Bankruptcy Code.

17.    Subsequent Reversal.    No modification, amendment, vacation or reversal of this Order shall affect the validity and enforceability of any lien or priority authorized or created hereby.  Any claim or lien granted to Lender hereunder arising prior to the effective date of such modification, amendment, vacation or reversal shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

18.    No Waiver of Rights.    This Order and the transactions contemplated hereby shall be without prejudice to, and do not constitute a waiver of, or otherwise impair, the right of Lender, among other things, (i) to seek additional adequate protection, including, without limitation, the benefit of section 507(b) of the Bankruptcy Code; (ii) to move for relief from the automatic stay; (iii) to oppose any extension of the Debtor's exclusive period for filing a plan of reorganization; (iv) to request any other relief in this Chapter 11 Case; or (v) to exercise any and all other rights, remedies, privileges, claims and causes of action, whether legal, equitable or otherwise, which Lender may have against any other party.

19.    Binding Effect.    Upon entry, this Order shall be binding on the Debtor, its estate, and Lender, and their respective successors and assigns, including, without limitation, any subsequently appointed trustee in the Debtor's bankruptcy proceeding, whether in chapter 11 or chapter 7.  Such binding effect is an integral part of this Order.

20.    No Partial "Take Out" Transactions.    Notwithstanding anything to the contrary herein or in the Loan Documents, under no circumstances may the Debtor enter or execute any

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

12

1    partial refinancing or recapitalization transaction to reduce the Indebtedness unless otherwise

2    agreed to in writing in Lender.    Accordingly, any refinancing or recapitalization transaction

3    involving the Collateral must be sufficient to indefeasibly pay in full the Indebtedness.  Insiders

4    (as that term is defined in the Bankruptcy Code) of the Borrower shall have the right to purchase

5    individual condominium units at the net Minimum Purchase Price, and the consummation of any

6    such transaction shall not, in and of itself, constitute a Termination Event.

7          21.    <u>Stay of Guaranty Litigation</u>.  Upon entry of this order so long as there has been no

8    occurrence of a Termination Event, Lender hereby agrees to stay prosecution of Lender's lawsuit

9    against the Guarantors with respect to their respective obligations arising under the guaranty

10    agreements referred to hereinabove.

11          Dated this ____ day of June, 2008.

12    APPROVED and AGREED to as to substance and form:

13    BELDING, HARRIS & PETRONI, LTD.        LIONEL SAWYER & COLLINS

14

15    By: <u>See attached signature page</u>        By: <u>Jennifer A. Smith</u>

16          Stephen R. Harris            Jennifer A. Smith
      Attorneys for MM Condominiums, LLC    Attorneys for GE Business Financial

17                                            Services, Inc.

18    JOHN F. ROYCE               CHARLES ROYCE

19

20    By: <u>See attached signature page</u>      By: <u>See attached signature page</u>

21    ALEX J. UMANA

22    By: <u>See attached signature page</u>

23                             # # #

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

13

21.  **Stay of Guaranty Litigation.**  Upon entry of this order so long as there has been no occurrence of a Termination Event, Lender hereby agrees to stay prosecution of Lender's lawsuit against the Guarantors with respect to their respective obligations arising under the guaranty agreements referred to hereinabove.

Dated:  ENTERED:

_____
UNITED STATES BANKRUPTCY JUDGE

This Order is approved and agreed to as to substance and form:

MM CONDOMINIUMS, LLC   GE BUSINESS FINANCIAL SERVICES, INC

By: _____   By: _____
    Its attorney  Stephen R. Harris       Its attorney

JOHN F. ROYCE

By: _____

CHARLES ROYCE

By: _____

ALEX J. UMANA

By: _____

12

21. <u>Stay of Guaranty Litigation</u>. Upon entry of this order so long as there has been no occurrence of a Termination Event, Lender hereby agrees to stay prosecution of Lender's lawsuit against the Guarantors with respect to their respective obligations arising under the guaranty agreements referred to hereinabove.

Dated:                              ENTERED:

_____
UNITED STATES BANKRUPTCY JUDGE


This Order is approved and agreed to as to substance and form:

MM CONDOMINIUMS, LLC  6-25-08          GE BUSINESS FINANCIAL SERVICES, INC

By: _____            By: _____
        Its attorney                              Its attorney


JOHN F. ROYCE

By: _____


CHARLES ROYCE

By: _____

ALEX J. UMANA

By: _____

# EXHIBIT "A"

EXHIBIT A TO ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE
CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION

| | Jun 08 | Jul 08 | Aug 08 |
|---|---|---|---|
| Cumulative sales post Cash Collateral (Agreement) execution | | 3 | 6 |
| Condo Sales | | | |
| Sales (3 @ $145,000) | 0.00 | 435,000 | 435,000 |
| Sales Costs | 0.00 | -4,350 | -4,350 |
| Closing Costs (1%) | | -39,150 | -39,150 |
| Commissions (7%) | | -13,050 | -13,050 |
| Concessions (3%) | 0.00 | | |
| Total Sales Costs | 0.00 | -56,550 | -56,550 |
| Total Condo Sales Proceeds | 0.00 | 378,450 | 378,450 |
| *(Total Condo Sales Proceeds will be disbursed to GE through escrow and applied as per Cash Collateral (Agreement)* | | | |
| Accrued post-petition interest to July 1, 2008 to be paid from sales proceeds | | 67,500 | |
| | | | 22,058 |
| Monthly payments to be paid from sales proceeds, otherwise from Developer DIP Acct. | | 3,189,050 | 2,832,558 |
| Loan Balance with GE at end of period (EOP) | 3,500,000.00 | | |
| Loan balance per Unit including exit fees at EOP | | 79,327 | 76,573 |
| | | 28,000 | 24,000 |
| Monthly Rental and Other Income | | | |
| *(To Cash Collateral Acct. with Gaston & Wilkerson)* | | | |
| Cash Collateral On Hand including Builders Control and all DIP Accounts | 80,610 | | |
| Monthly Operating Expenses | -20,000 | -20,000 | -18,000 |
| *(Including HOA Dues on unsold Units)* | | | |
| Total Net Rental Operating Income | 60,610 | 8,000 | 6,000 |
| *(See Sample Gaston and Wilkerson attachment A-1)* | | | |
| Cash authorized expenditures at signing of Cash Collateral (Agreement) | 79,340 | | |
| *(See attachment A-2)* | | | |
| General Business Operating Expenses authorized to be paid from Cash Collateral to extent funds available therefrom | | | |
| Accountant (Spectra employee) | 2,000 | 2,000 | 2,000 |
| Home Owners Assoc. Dues Sold units | 3,420 | 3,420 | 3,420 |
| Marketing | | | |
| Model Staging and Maintenance | 100 | 100 | 100 |
| Print Advertising | 1,200 | 1,900 | 1,900 |
| Promotional | 500 | | |
| Signage | 1,000 | | |
| Sales Office Rent | 500 | 500 | 500 |
| Staff Salaries for property Management (Spectra) | 6,000 | 6,000 | 6,000 |
| Total Gen. Bus. Operation Exp. | 93,050 | 13,920 | 13,920 |
| *(To the extent that Cash Collateral funds are not available to pay the above expenses they will be paid from Non-Cash Collateral funds - see bel* | | | |
| Cash Infusion from Non-Cash Collateral source(s) | 250,000 | | |
| *(Guaranteed upon execution of Cash Collateral (Agreement))* | | | |
| To be deposited into Builders Control | 170,000 | | |
| To be deposited into Developer DIP Acct. | 80,000 | | |
| Other funds into Developer DIP from Loans or equity to be deposited as needed | 60,000 | 20,000 | 20,000 |
| Total Non-Cash Collateral | 310,000 | 20,000 | 20,000 |
| Expenses to be paid from Non-Cash Collateral | | | |
| Lender Legal Fees - Upon execution of (Agreement) | 64,000 | | |
| .5% Loan Modification Fee (Upon execution of (Agr) | 17,500 | | |
| Operating Expenses not paid from Cash Collateral | 32,450 | 5,920 | 7,920 |
| General Office Overhead: | 4,500 | 4,600 | 4,500 |
| Model Rental Expense | 4,000 | 4,000 | 4,000 |
| Project Manager | 650 | | |
| Chapter 11 Quarterly Trustee Fee (should be below paid from Non Cash Collateral) | | | |
| Sub-Total Exp. Paid from Non-Cash Collateral | 123,100 | 14,420 | 16,420 |
| Remaining Dev. Non-Cash Collateral EOP (excluding Builders Control) | 16,900 | 22,480 | 26,060 |
| Unit Rehab Expenses Paid from Non-Cash Collateral Builders-Control | | | |
| Appliances | | 1,000 | 1,000 |
| Cabinet work | | 1,000 | 1,000 |
| Carpet and hardsurface | | 3,000 | 3,000 |
| Countertops | | 1,000 | 1,000 |
| Labor for Improvements to units paid to Mountain Maintenance | | 10,000 | 10,000 |
| Total Rehab Expenses | | 16,000 | 16,000 |
| Remaining Builder Control Balance EOP | 170,000 | 154,000 | 138,000 |

Page 1 of 2

EXHIBIT A TO ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE
CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION

| | Sep 08 | Oct 08 | Nov 08 | Dec 08 | TOTALS Jun – Dec 08 |
|---|---|---|---|---|---|
| Cumulative sales post Cash Collateral (Agreement) execution | 9 | 12 | 15 | 18 | 18 |
| Condo Sales | | | | | |
| Sales (3 @ $145,000) | 435,000 | 435,000 | 435,000 | 435,000 | 2,610,000 |
| Sales Costs | -4,350 | -4,350 | -4,350 | -4,350 | -26,100 |
| Closing Costs (1%) | -39,150 | -39,150 | -39,150 | -39,150 | -234,900 |
| Commissions (7%) | -13,050 | -13,050 | -13,050 | -13,050 | -78,300 |
| Concessions (3%) | | | | | |
| Total Sales Costs | -56,550 | -56,550 | -56,550 | -56,550 | -339,300 |
| Total Condo Sale Proceeds | 378,450 | 378,450 | 378,450 | 378,450 | 2,270,700 |

(Total Condo Sales Proceeds will be disbursed to GE through escrow and applied as per Cash Co.

| | | | | | |
|---|---|---|---|---|---|
| Accrued post-petition interest to July 1, 2008 to be paid from sales proceeds | 19,593 | 17,110 | 14,611 | 12,095 | |
| Monthly payments to be paid from sales proceeds, otherwise from Developer DIP Acct. | 2,473,800 | 2,112,461 | 1,748,622 | 1,382,286 | |
| Loan Balance with GE at end of period (EOP) | | | | | |
| Loan balance per Unit including exit fees at EOP | 73,345 | 69,526 | 64,959 | 59,428 | |

| | | | | | |
|---|---|---|---|---|---|
| Monthly Rental and Other Income | 22,000 | 20,000 | 19,000 | 18,000 | 131,000 |
| (To Cash Collateral Acct. with Gaston & Wilkerson) | | | | | |
| Cash Collateral On Hand including Builders Control and all DIP Accounts | | | | | |
| Monthly Operating Expenses | -17,000 | -16,000 | -15,000 | -14,000 | -100,000 |
| (Including HOA Dues on unsold Units) | | | | | |
| Total Net Rental Operating Income | 5,000 | 4,000 | 4,000 | 4,000 | 0 |
| (See Sample Gaston and Wilkerson attachment A-1) | | | | | |

Cash authorized expenditures at signing of Cash Collateral (Agreement)
(See attachment A-2)

| | | | | | |
|---|---|---|---|---|---|
| General Business Operating Expenses authorized to be paid from Cash Collateral to exten' | 2,000 | 2,000 | 2,000 | 2,000 | 14,000 |
| Accountant (Spectra employee) | 3,420 | 3,420 | 3,420 | 3,420 | 23,940 |
| Home Owners Assoc. Dues Sold units | | | | | 700 |
| Marketing | 100 | 100 | 100 | 100 | 12,600 |
| Model Staging and Maintenance | 1,900 | 1,900 | 1,900 | 1,900 | 1,000 |
| Print Advertising | 500 | | | | 1,000 |
| Promotional | | | | | 3,500 |
| Signage | 500 | 500 | 500 | 500 | 42,000 |
| Sales Office Rent | 6,000 | 6,000 | 6,000 | 6,000 | 177,080 |
| Staff Salaries for property Management (Spectra) | | | | | |
| Total Gen. Bus. Operation Exp. | 14,420 | 13,920 | 13,920 | 13,920 | |

(To the extent that Cash Collateral funds are not available to pay the above expenses they will be paid below)

| | | | | | |
|---|---|---|---|---|---|
| Cash Infusion from Non-Cash Collateral source(s) | | | | | 170,000 |
| (Guaranteed upon execution of Cash Collateral (Agreement)) | | | | | |
| To be deposited into Builders Control | | | | | 80,000 |
| To be deposited into Developer DIP Acct | | | | | 180,000 |
| Other funds into Developer DIP from Loans or equity to be deposited as needed | 20,000 | 20,000 | 20,000 | 20,000 | 430,000 |
| Total Non-Cash Collateral | 20,000 | 20,000 | 20,000 | 20,000 | |

| | | | | | |
|---|---|---|---|---|---|
| Expenses to be paid from Non-Cash Collateral | | | | | |
| Lender Legal Fees - Upon execution of (Agreement) | | | | | |
| .5% Loan Modification Fee (Upon execution of (Agr) | 9,420 | 9,920 | 9,920 | 9,920 | 85,470 |
| Operating Expenses not paid from Cash Collateral | | | | | |
| General Office Overhead: | 4,500 | 4,500 | 4,500 | 4,500 | 31,500 |
| Model Rental Expense | 4,000 | 4,000 | 4,000 | 4,000 | 28,000 |
| Project Manager | 6,500 | | | 6,500 | 13,650 |
| Chapter 11 Quarterly Trustee Fee (should be below paid from Non Cash Collateral) | | | | | |
| Sub-Total Exp. Paid from Non-Cash Collateral | 24,420 | 18,420 | 18,420 | 24,920 | 240,120 |
| Remaining Dev. Non-Cash Collateral EOP (excluding Builders Control) | 21,640 | 23,220 | 24,800 | 19,880 | |

| | | | | | |
|---|---|---|---|---|---|
| Unit Rehab Expenses Paid from Non-Cash Collateral Builders-Control | | | | | |
| Appliances | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Cabinet work | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Carpet and hardsurface | 3,000 | 3,000 | 3,000 | 3,000 | 18,000 |
| Countertops | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Labor for improvements to units paid to Mountain Maintenance | 10,000 | 10,000 | 10,000 | 10,000 | 60,000 |
| Total Rehab Expenses | 16,000 | 16,000 | 16,000 | 16,000 | 96,000 |
| Remaining Builder Control Balance EOP | 122,000 | 106,000 | 90,000 | 74,000 | |

Page 2 of 2

| | | | | | Page 1<br>mmcondo<br>2/15/2008<br>12:16 PM |
|---|---|---|---|---|---|

**Attachment A-1**          **Cash Flow (Cash)**
**MM Condominiums LLC - (1)**
**Jan 2008**

Prepared For:
MM Condominiums LLC
1281 Terminal Way
Suite 201
Reno, NV 89502

Prepared By:
Gaston & Wilkerson Mgmt
P.O. Box 10590
Reno, NV 89510

| | Month to Date | % | Year to Date | % |
|---|---|---|---|---|
| **INCOME** | | | | |
| **RENTAL INCOME** | | | | |
| Gross Potential Rental Income | 62,410.00 | 139.82 | 62,410.00 | 139.82 |
| Rehab Units | -15,366.00 | -34.43 | -15,366.00 | -34.43 |
| Delinquent Rent | -1,549.20 | -3.47 | -1,549.20 | -3.47 |
| Rent Loss to Collections | -70.44 | -0.16 | -70.44 | -0.16 |
| Move-In Specials | -2,325.00 | -5.21 | -2,325.00 | -5.21 |
| NET RENTAL INCOME | 43,099.36 | 96.56 | 43,099.36 | 96.56 |
| **OTHER INCOME** | | | | |
| Credit Report Fees | 25.00 | 0.06 | 25.00 | 0.06 |
| Late Fees | 224.92 | 0.50 | 224.92 | 0.50 |
| NSF Charges | 100.08 | 0.22 | 100.08 | 0.22 |
| Security Deposits Forfeited | 1,012.04 | 2.27 | 1,012.04 | 2.27 |
| Utility Reimbursement | 71.48 | 0.16 | 71.48 | 0.16 |
| Miscellaneous Income | 101.50 | 0.23 | 101.50 | 0.23 |
| TOTAL OTHER INCOME | 1,535.02 | 3.44 | 1,535.02 | 3.44 |
| TOTAL INCOME | 44,634.38 | 100.00 | 44,634.38 | 100.00 |
| **OPERATING EXPENSES** | | | | |
| **ADMINISTRATION** | | | | |
| Advertising | 649.89 | 1.46 | 649.89 | 1.46 |
| Association Fees | 15,996.00 | 35.84 | 15,996.00 | 35.84 |
| Bank Charges | 15.00 | 0.03 | 15.00 | 0.03 |
| Credit Report | 35.70 | 0.08 | 35.70 | 0.08 |
| Management Fees | 1,610.45 | 3.61 | 1,610.45 | 3.61 |
| Office Expense | -148.19 | -0.33 | -148.19 | -0.33 |
| Postage | 10.94 | 0.02 | 10.94 | 0.02 |
| Telephone | 92.45 | 0.21 | 92.45 | 0.21 |
| TOTAL ADMINISTRATION | 18,262.24 | 40.92 | 18,262.24 | 40.92 |
| **CLEANING** | | | | |
| Cleaning - Carpet | 210.00 | 0.47 | 210.00 | 0.47 |
| TOTAL CLEANING | 210.00 | 0.47 | 210.00 | 0.47 |
| **UTILITIES** | | | | |
| Electric | 717.11 | 1.61 | 717.11 | 1.61 |
| Gas | 1,715.53 | 3.84 | 1,715.53 | 3.84 |
| Trash Removal | 983.70 | 2.20 | 983.70 | 2.20 |
| TOTAL UTILITIES | 3,416.34 | 7.65 | 3,416.34 | 7.65 |
| TOTAL OPERATING EXPENSE | 21,888.58 | 49.04 | 21,888.58 | 49.04 |
| NET OPERATING INCOME | 22,745.80 | 50.96 | 22,745.80 | 50.96 |
| **NON-OPERATING INCOME** | | | | |

| Attachment A-1 | Cash Flow (Cash)<br>MM Condominiums LLC - (1)<br>Jan 2008 | | | Page 2<br>mmcondo<br>2/15/2008<br>12:16 PM | |
|---|---|---|---|---|---|
| | Month to Date | % | Year to Date | % | |
| Interest Income | 40.38 | 0.09 | 40.38 | 0.09 | |
| **TOTAL NON-OPERATING INCOME** | 40.38 | 0.09 | 40.38 | 0.09 | |
| NET INCOME | 22,786.18 | 51.05 | 22,786.18 | 51.05 | |
| ADJUSTMENTS | | | | | |
| Accounts Receivable | -900.00 | | -900.00 | | |
| Prepaid Rent | -2,284.48 | | -2,284.48 | | |
| Tenant Security Deposits | -1,325.00 | | -1,325.00 | | |
| Owner Distribution | -18,081.00 | | -18,081.00 | | |
| TOTAL ADJUSTMENTS | -22,590.48 | | -22,590.48 | | |
| CASH FLOW | 195.70 | | 195.70 | | |
| Beginning Cash | 3,097.22 | | | | |
| Ending Balance | 2,583.28 | | | | |

**Attachment A-2**

## MM Condominium – Immediate Disbursement Request

Expenses Required to be Paid:

| | |
|---|---:|
| Payables that Gaston Wilkerson has on hand from apartment operations | $8,429.00 |
| HOA dues for April and May | $21,200.00 |
| Mountain Maintenance for April maintenance and repairs of project | $5,336.25 |
| Spectra Funding - April and May management and sales personnel wages | $18,000.00 |
| Reno Gazette-Journal advertising expense | $2,500.00 |
| Home Depot - April maintenance and remodeling expenses | $5,935.00 |
| CMR MM, LLC May model rental | $4,500.00 |
| Sierra Property Maintenance painting services | $4,595.00 |
| Flooring Solutions carpet work | $1,610.00 |
| Surface Doctor counter top work | $834.50 |
| Kelly Moore | $354.00 |
| Diamond Glass | $4,046.09 |
| Misc. office expense bills (utilities, etc.) | $1,000.00 |
| **Total expenses** | **$78,340.39** |

Cash on Hand:

| | |
|---|---:|
| Builder Control account | $12,133.04 |
| Gaston & Wilkerson cash on hand from rents | $35,477.46 |
| Gross rents to be collected in first week of June | $33,000.00 |
| **Total cash available:** | **$80,610.05** |

# EXHIBIT "B"

EXHIBIT B TO ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE
CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION

## SCHEDULE II

**Minimum Release Price**

| Unit Type | Square Feet | Minimum Release Price |
|---|---|---|
| 2 bedroom/ 2 bathroom | 950 | $125,000.00 |
| 2 bedroom/ 2.5 bathroom | 1,185 | $125,000.00 |
| 2 bedroom/ 2.5 bathroom | 1,250 | $125,000.00 |